IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Timothy A. Pearce, </br> Plaintiff, | ) </br> ) </br> ) |
| v. | )      1:20cv413 (AJT/TCB) </br> ) |
| William Smith, *et al.*, </br> Defendants. | ) </br> ) </br> ) |

MEMORANDUM OPINION & ORDER

In this civil-rights suit, *see* 42 U.S.C. § 1983, Virginia inmate Timothy A. Pearce claims that three officials at Western Tidewater Regional Jail (WTRJ)—William Smith, Doris Jacobs, and Karen Modesitt, the jail's superintendent, health services administrator, and director of nursing, respectively—acted with deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. [Dkt. No. 7]. Defendants move for summary judgment. [Dkt. No. 30]. Pearce, a *pro se* litigant, has received the notice required by Local Civil Rule 7(K) and *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and has filed nothing in response. [Dkt. No. 32]. Because the undisputed evidence demonstrates that Smith, Jacobs, and Modesitt are entitled to judgment as a matter of law, the Court will grant defendants' motion.

I. Background

*A) The Amended Complaint*

In the unverified, amended complaint, Pearce claims that ever since he arrived at WTRJ on June 13, 2019, he has received constitutionally inadequate treatment for two conditions: (1) depression and anxiety from posttraumatic stress disorder (PTSD); and (2) an unspecified sleep disorder. He alleges that he had been taking four prescription medications at his previous institution of confinement: Celexa once daily at 7 am; Vistaril three times daily at 7 am, 1 pm,

and 10 pm; Buspar, also three times daily at 7 am, 1 pm, and 10 pm; and Trazadone once daily at 10 pm. He further alleges that during intake, a nurse took him off the Vistaril without a psychiatrist evaluating him first.

Pearce further alleges that for the medication he *did* receive, those were not delivered timely. For instance, he alleges, morning medication was delivered around 11 am, afternoon medication was delivered between 3 pm and 4 pm, and nighttime medication routinely was delivered after midnight. He adds that this timing of medication delivery negatively impacted his sleep, anxiety, and depression.

Next, Pearce alleges that he submitted grievances about the medication-delivery delays, and he received responses from Modesitt and Jacobs, who made empty promises about alleviating the problem. First, he alleges that Modesitt responded to a December 13, 2019, grievance only by telling him to use medical-service request forms for medical concerns. Then, Pearce continues, in a response to a January 23, 2020, grievance, Modesitt responded, "[w]e will look into an alternative plan to ensure the medications are being dispensed at a more convenient time for you," but nothing ever changed. [Amended Compl., at p. 7]. Pearce submitted another grievance on March 13, 2020, and Jacobs responded that she would investigate the problem, but nothing changed. Finally, Pearce alleges, after submitting another grievance on April 15, 2020, Modesitt assured him that "staff will be making an effort to distribute the medications at an earlier time so that you can establish good sleep patterns," and for the next two weeks, his medication was timely delivered. [*Id.* at p. 8]. He further alleges the delays persisted again, even after his family called the jail to complain to Superintendent Smith.

Additionally, Pearce alleges that he was placed on suicide watch three times because he complained about anxiety and depression, and that this placement "only made things worse." [*Id.*

2

at p. 9]. He further alleges that he repeatedly asked for a psychiatric evaluation by an outside psychiatrist, but those requests were denied. Instead, he was seen monthly by the jail psychiatrist.

*B) Summary Judgment Record*

Defendants move for summary judgment on Pearce's Eighth Amendment claims. They interpret the amended complaint as bringing claims for deliberate indifference to a serious medical need under three theories: (1) When Pearce was admitted to WTRJ, he was abruptly taken off Vistaril without seeing a psychiatrist; (2) the delivery of his medication was routinely delayed by a few hours; and (3) when Pearce reported his deteriorating mental health, he was placed on suicide watch. (Pearce does not contest this construction.) Defendants support their motion with Pearce's jail intake and medical records and affidavits from Jacobs and Modesitt.

Jail records show that Pearce was transferred to WTRJ on June 13, 2019, from a correctional facility in North Carolina. [Def. Ex. 1, at p. 1; Def. Ex. 2, at p. 62]. During intake Peace reported hearing voices and a history of suicide attempts and psychiatric hospitalizations. [Def. Ex. 2, at pp. 1–2]. (The next day a mental health evaluation was conducted. [*Id.* at p. 63].) After his arrival, jail physicians ordered that Pearce continue to receive five medications: Buspirone (Buspar)[1] twice daily (morning and evening); Citalopram Hydrobromide (Celexa)[2] daily in the morning; Hydroxyzine Pamoate (Vistaril) daily in the morning; Meloxicam daily in the morning; and Mirtazapine daily in the evening. [Def. Ex. 2, at p. 11; Modesitt Aff. ¶¶ 13, 24; Jacobs Aff. ¶ 14]. Pearce's medical records show that on his arrival date, he received his nighttime medications. [Def. Ex. 2, at p. 11]. The next day Pearce did not receive his four

---

[1] *See* https://medlineplus.gov/druginfo/meds/a688005.html (explaining that the drug Pearce identifies as Buspar is the brand bane for Buspirone) (last revised Apr. 15, 2019)

[2] *See* https://medlineplus.gov/druginfo/meds/a699001.html (explaining that the drug Pearce identifies as Celexa is the brand name for Citalopram) (last revised Jan. 15, 2022).

morning medications. [*Id.*]. By his third day at WTRJ, Pearce received all five prescribed medications, and he continued to receive each, as prescribed, for the rest of the month. [*Id.*].

Dr. Collins, the jail psychiatrist, discontinued Pearce's prescription for Vistaril on July 10, 2019. [*Id.* at p. 90]. Pearce's medical records show that he had received his daily Vistaril from June 15, 2019—two days after his arrival at WTRJ—until the discontinuation on July 10. [*Id.* at p. 11].

Jacobs and Modesitt attest by affidavit about their respective roles at WTRJ and the process for obtaining medication and mental-health care. Jacobs is a registered nurse but does not provide medical care to inmates at WTRJ in her role as health services administrator. [Jacobs Aff. ¶¶ 1, 3–4]. Instead, her duties include acting as the records custodian for the WTRJ medical department and ensuring the medical department follows applicable policies and procedures. [*Id.* ¶ 5]. Modesitt is the director of nursing at WTRJ, a position that entails scheduling nurses, ordering medical supplies, and responding to medical-related grievances, not providing mental-health care to inmates. [Modesitt Aff. ¶¶ 1, 4–5].

Jacobs and Modesitt further attest that inmates may seek medical or mental-health treatment by submitting a medical request to the medical department. [Jacobs Aff. ¶ 8; Modesitt Aff. ¶ 8]. Then, the inmate will be put on a list to see one of two jail physicians, Dr. Taylor or Dr. Collins. [Jacobs Aff. ¶ 8; Modesitt Aff. ¶ 8]. From there, the doctors triage their patient lists and decide who to see and in what order. [Jacobs Aff. ¶ 8; Modesitt Aff. ¶ 8]. The doctors also determine what medications are appropriate for a particular inmate and are responsible for ordering those medications. [Jacobs Aff. ¶ 9; Modesitt Aff. ¶ 9]. Accordingly, when an inmate arrives at the jail, these doctors determine whether a medication prescribed by an outside

4

provider should be continued, and those medications are usually continued using the jail's pharmacy. [Jacobs Aff. ¶ 10; Modesitt Aff. ¶ 10].

As for medication delivery, Jacobs and Modesitt aver that floor nurses are responsible for passing out medication to inmates. [Jacobs Aff. ¶ 17; Modesitt Aff. ¶ 17]. Medication pass occurs three times every day—once in the morning, once mid-day, and once in the evening. [Jacobs Aff. ¶ 19; Modesitt Aff. ¶ 19]. For the safety of the nurses and inmates, they declare, medication pass is executed with the assistance of jail officers. [Jacobs Aff. ¶ 20; Modesitt Aff. ¶ 20]. Because medication pass is dependent on the availability of jail officers, the precise timing of medication pass varies daily, unless a doctor orders that a medication be given to an inmate at a specific time each day. [Jacobs Aff. ¶¶ 21, 23; Modesitt Aff. ¶¶ 21, 23]. Medication ordered to be given more than once a day will be given at staggered times. [Jacobs Aff. ¶ 22; Modesitt Aff. ¶ 22]. None of Pearce's prescriptions were ordered to be given at specific times. [Def. Ex. 2, at p. 11; Jacobs Aff. ¶ 24; Modesitt Aff. ¶ 24].

Finally, Jacobs and Modesitt attest to their role in Pearce's medical care at WTRJ, chiefly, that they played no role. Both aver that neither was involved in the decision to continue or discontinue any of Pearce's medications. [Jacobs Aff. ¶ 16; Modesitt Aff. ¶ 16]. Further, both declare that they were not involved in placing Pearce on suicide watch, and that neither are responsible for approving or scheduling outside mental-health referrals. [Jacobs Aff. ¶¶ 27, 30; Modesitt Aff. ¶¶ 27, 30].

## II. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party,"

and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Hupp v. Cook*, 931 F.3d 307, 317 (4th Cir. 2019) (internal quotation marks and citations omitted). In evaluating a summary judgment motion, the Court views the evidence, and draws all inferences, in the light most favorable to the nonmoving party, in this case, Pearce. *See E.W. by T.W. v. Dolgos*, 884 F.3d 172, 178 (4th Cir. 2018).

### III. Analysis

Defendants principally argue that the undisputed evidence demonstrates that they were not personally involved in the allegedly deficient medical care that Pearce received at WTRJ. Frist, they assert that the amended complaint contains no particularized allegations against Superintendent Smith. Second, they contend that the undisputed evidence shows that neither Jacobs nor Modesitt could have been personally involved in Pearce's medical care at WTRJ because they do not prescribe or distribute medication, place inmates on suicide watch, or schedule inmate appointments with outside physicians.

As defendants point out, there is no evidence demonstrating that Smith, Jacobs, or Modesitt acted with deliberate indifference to Pearce's serious medical needs. At bottom, for liability to be imposed under § 1983, each defendant must have had personal knowledge of, *and involvement in*, the alleged violations of the plaintiff's constitutional rights for the action to proceed. *See De'Lonta v. Fulmore*, 745 F. Supp. 2d 687, 690–91 (E.D. Va. 2010). Concerning Superintendent Smith, the amended complaint alleges only that Pearce's family complained to him about the medication-delivery schedule. Not only is this allegation not evidence that can be relied on to create a material dispute of fact, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991), even if this were admissible evidence it would not demonstrate that Smith played any role in the provision of medical care at

6

WTRJ. As for the actual record evidence submitted, none demonstrates that either Jacobs or Modesitt played any role in patient care at WTRJ, including ordering medication, delivering medication, placing inmates on suicide watch, and scheduling appointments for inmates to see outside physicians. All told, because the undisputed record does not establish "any personal connection" between the defendants and Pearce's medical treatment at WTRJ, they are entitled to judgment as a matter of law. *See Vinnedge v. Gibbs*, 550 F. 2d 926, 928 (4th Cir. 1977).

Accordingly, it is hereby

ORDERED that defendants' motion for summary judgment [Dkt. No. 30] be and is GRANTED; and it is further

ORDERED that this civil action be and is DISMISSED.

To appeal this decision, plaintiff must file a Notice of Appeal ("NOA") with the Clerk's Office within thirty (30) days of the date of this Order, including in the NOA the date of the Order plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the appellate court. Failure to file a timely NOA waives the right to appeal this Order.

The Clerk is directed, pursuant to Federal Rule of Civil Procedure 58, to enter final judgment in favor defendants; to send a copy of this Order to plaintiff and to counsel of record for defendants; and to close this civil action.

Entered this 9th day of Sept, 2022.

Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge